US DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FILED

FEB 20 2026

Ronald E. Dowling
By_____
Deputy Clerk

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF ARKANSAS

DAVID STEBBINS           PLAINTIFF/CLAIMANT

VS.           CASE 3:26mc05

BOBANKS HOLDINGS, LLC           DEFENDANT/RESPONDENT

## APPLICATION TO COMPEL ARBITRATION

Comes now, pro se Plaintiff David Stebbins, who hereby submits the following Application to Compel Arbitration in the above-styled action, or in the alternative to permanently enjoin the Defendants from ever arbitrating another dispute in the State of Arkansas, ever again.

### JURISDICTIONAL STATEMENT

1. My employment occurred in Harrison, AR. Meanwhile, the Defendant's principal address is located in Rogers, AR, according to the AR Secretary of State's Business Entity Search webpage[1]. Either one is sufficient to establish personal jurisdiction in the US District Court for the Western District of Arkansas.

### FACTS OF THE CASE

2. I accepted a job offer from the Defendants on August 12, 2025. As a condition for employment, the Defendant and I agreed to resolve all employment-related disputes through binding arbitration ("the Agreement" for short) with the American Arbitration Association (or "AAA" for short). A copy of the agreement is hereby attached as **Exhibit A**.

3. Whenever the employee initiates arbitration, the agreement calls for the employer to pay all costs associated with the arbitration agreement except for the equivalent of that state's filing fee for a civil action, unless the AAA agrees that the plaintiff pay less.

4. I was terminated later that same month for a discriminatory purpose, and was never even

---

[1] Found at https://www.ark.org/corp-search/

paid what few wages I actually earned while working there. So, I filed a charge of discrimination and retaliation with the EEOC, got a Notice of Right to Sue from them, and proceeded to file a demand for arbitration with the AAA for discrimination, retaliation, and wage theft.

5.  On January 15, 2026, the AAA accepted my demand for arbitration and submitted a letter to the defendants, both via mail and email, stating (A) that my filing fee obligations had been satisfied, and (B) asking them to pay a fee of $2,100 by no later than January 29, 2026. See **Exhibit B**.

6.  January 29 came and went, and the defendants did not remit payment. So, on January 30, 2026, the AAA sent another letter to the same address and email address, giving the employer one more chance to remit payment by no later than Friday February 13, 2026, otherwise it would decline to administer the case and possibly even decline to administer any future cases involving that employer. See **Exhibit C**.

7.  Again, February 13 came and went, and the Defendants did not remit payment. Therefore, on Monday February 16, 2026, the AAA submitted one final letter declining to administer this case and closing the file. See **Exhibit D**.

## ARGUMENT

8.  Whenever there is a valid and binding arbitration agreement between two or more parties, and one or more parties fails to arbitrate according to the terms, a court of competent jurisdiction is authorized to issue an injunction ordering the non-compliant party to arbitrate according to the agreement. See 9 USC § 4.

9.  However, there is another public policy the Court should consider. If the employer can nullify the arbitration agreement and choose litigation on a case-by-case basis, without the employee also agreeing to suspend the arbitration agreement, through the simple expedient of not

paying their share of the filing fees, and the effects thereof only apply to the one case where they choose not to pay the fees, then that effectively gives the employer a one-way unilateral option of whether or not the arbitration agreement even applies, without giving that same option to the employee. Under Arkansas law, this renders the arbitration agreement unenforceable per se.

10. Under Arkansas law, a contract requires "mutuality of obligation... neither party is bound unless both are bound. A contract, therefore, which leaves it entirely optional with one of the parties as to whether or not he will perform his promise would not be binding on the other." See Showmethemoney Check Cashers v. Williams, 27 SW 3d 361, 366 (2000). In the context of arbitration agreements, the State of Arkansas has decades and decades of case law stating that, whenever the corporation (such as an employer or creditor) retains the unilateral right to proceed to court whenever it wants while the individual (e.g. the employee or debtor) is forced into arbitration, the arbitration agreement is rendered entirely unenforceable. See Tyson Foods, Inc. v. Archer, 147 SW 3d 681, 685 (2004)[2]. See also Robinson v. Phillips, 586 SW 3d 624, 633 (2019)[3], among others.

11. In the instant case, the defendants have unilaterally forced me to proceed to Court (unless the Court chooses Remedy #1 below) through their refusal to pay the AAA's fees rather than through explicit contractual language, but the end result is the same.

12. If the Defendants are able to pocket veto the arbitration agreement in this case, it stands to reason they will likely do it in other cases as well, whenever they (in their unilateral and arbitrary discretion) decide it is to their advantage to litigate in court rather than arbitration. Under Arkansas law, this is not something they should be allowed to continue to do.

---

[2] "A review of the 'swine' contracts reveals that there is indeed a lack of mutuality, as Appellees agreed to forgo their rights to pursue judicial actions, while Appellants retained their ability to pursue an action through the judicial process."

[3] "We have held that there is no mutuality of obligation when one party uses an arbitration agreement to shield itself from litigation, while reserving to itself the ability to pursue relief through the court system."

## RELIEF REQUESTED

13. For all of these reasons and more, I hereby request the Court to grant one of the following sets of relief, but whichever set it chooses, I ask that the Court do all of the things contained in that set.

14. The Court should either...

   (a) Remedy #1 (my preferred remedy):

   i. Order the Defendant to submit to binding arbitration;

   ii. Because the AAA has declined to administer the case, the Court should also appoint its own arbitrator pursuant to 9 USC § 5; and

   iii. Order the Defendants to pay, in the first instance, all costs associated with the arbitration, per the arbitration agreement that they themselves drafted.

   (b) or Remedy #2:

   i. Declare that all of the defendant's arbitration agreements within Arkansas (not just the one with me) are null and void for want of mutuality of obligation,

   ii. Order the Defendant to never again seek arbitration for any dispute in Arkansas,

   iii. Notify all of its current employees and ongoing[4] customers that their arbitration agreements are null and void, and to provide proof to the Court within two weeks of the order proving that they have sent this to all their employees and ongoing clients, and

   iv. Grant me leave to file a belated lawsuit against the Defendants, either in this Court, the Circuit Court of Boone County Arkansas (where the employment occurred), or the Circuit Court of Benton County Arkansas (where the Defendants are headquartered), even though the Notice of Right to Sue is more than 90 days old.

---

4  By "ongoing," I mean customers who have active subscriptions to their service, to the point where the company can realistically keep track of them, not simply people who happen to walk into the store to buy some things, but where the company has no way of knowing when the customer is coming.

15. However, one thing the Court should not do is simply grant the remedy mentioned in ¶ 14(b)(iv) above, but without also granting the relief mentioned in ¶ 14(b)(i)-(iii). If the Court did that, then the Defendants will have effectively suffered no consequences for their decision to unilaterally not fulfill their obligations under the agreement. The Defendants need to suffer *some* consequences for breaking the agreement, otherwise it will have simply gotten what it wanted out of this case (litigating the case in court rather than arbitration, which they apparently decided it was in their best interests to do in this one case) without having to forfeit any rights to enforce arbitration in other cases, and Arkansas law has made it clear that such unilateral case-by-case determination on when to arbitrate is against public policy.

16. If this sort of pocket veto is allowed to stand with no repercussions, the Defendants and other employers similarly situated would be empowered to simply use this as a means of bypassing Arkansas's ban on non-mutual arbitration agreements, and they should not be allowed to do that. In fact, this would be even more insidious than the one-sided arbitration agreements of yesteryear, since at least those agreements were upfront about their lack of mutuality, whereas the pocket veto described in this case means that arbitration agreements that purport on their face to be mutual are in fact not mutual. It's a classic case of "wolf in sheep's clothing."

17. The best way to deter that sort of abuse is to either force the employers to arbitrate with a court-appointed arbitrator (where they will have no "repeat player advantage," which arbitration law scholars agree is the primary reason for arbitration's current reputation of heavily favoring corporations and where individuals rarely win in it[5]), or make it so that anyone who does it effectively loses the right to arbitrate *any* dispute in Arkansas because it renders their arbitration agreements de facto non-mutual and, therefore, unenforceable in Arkansas.

---

5 See https://brownfirm.law/glossary/repeat-player-effect-in-arbitration/

## CONCLUSION

18. Wherefore, premises considered, I respectfully pray that this Application to Compel Arbitration be granted, costs incurred be awarded, and for any other relief to which I may be entitled. So requested on this, the 17th day of February, 2026.

David Stebbins
123 W. Ridge Ave.,
Apt D
Harrison, AR 72601
870-204-6516
stebbinsd@yahoo.com

**CPU**

U.S. POSTAGE IMI
$2.17
FCMF    RDC 99
Orig: 72601
Dest: 72701    8W
02/17/26
2000053031    02

US District Court
35 E. Mountain St.
Room 510
Fayetteville, AR 72701

Received WD/AR
FEB 20 2026
U.S. Clerk's Office

David Stebbins
123 W. Ridge Ave.
Apt D
Harrison, AR 72601